## JOHN SURRELL V. THE STATE.

*No. 3636.    Decided December 17.*

**1.   Practice—Evidence—Cross-Examination.**—It is a general rule of evidence that a witness cross-examined on a matter collateral to the issue can not be subsequently contradicted by the party putting the question.   An exception to this rule is when the contradictory or impeaching evidence tends to establish hostile motive on the part of the impugned witness, or his bias against or animosity toward the accused.   But note that the evidence offered by the defense in this case to impeach the testimony of a prosecuting witness upon a collateral issue elicited upon cross-examination does not come within the exception, and was properly excluded by the trial court.

**2.   Same — Charge of the Court.** — Among the general rules which apply to the charge of the court are the following:   The charge must set forth distinctly the law applicable to the case—that is, to the allegations of the indictment and the evidence.   It must conform to and be limited by the allegations of the indictment and by the evi- dence adduced.   It must not rest the guilt of the accused upon a state of case not made by the evidence, and will be erroneous if it does.   A charge not warranted by evidence will, if excepted to, constitute reversible error, although such error may be harmless, or even inure to the benefit of the accused.   As to circumstantial evidence, the charge can submit the law of such evidence only when the evidence relied upon by the State is purely and solely circumstantial in character.

**3.   Same — Circumstantial Evidence — Case Stated.** — The trial court in this case instructed the jury upon the law of circumstantial evidence.   The defense excepted upon the ground that the evidence was not only not circumstantial, but that it was di- rect and positive, and that it raised no question as to the mode and manner of the kill- ing, or the attendant circumstances, or the identity of the parties.   It is contended on this appeal that the charge, being excepted to, constitutes reversible error, independent of the question of prejudice.   The bill of exception reserved to this charge is explained by the endorsement of the the trial judge as follows:   "The defendant's knife was found with blood on it immediately after the cutting, but no witness testified that he saw the defendant cut the deceased with the knife; hence the charge complained of." This explanation is borne out by the record.   The facts, however, were in such close juxtaposition that had the trial court omitted to charge upon circumstantial evidence such omission would have been held not erroneous upon the ground that the charge was *not required*.   But because a charge is *not required* it does not necessarily follow that it was unauthorized and illegal; and if not, as in this case, illegal, though not re- quired, and it inures to the benefit of the accused, it will not be held reversible error.

**4.   Same — Manslaughter.** — See the statement of the case for the charge of the court upon the issue of manslaughter as involved in this case *held* sufficient, especially in the absence of requested instructions.

**5.   Same—Practice.**—Requested instructions, however correct, are not required to be given by the court, unless they are presented in writing by the party requesting them.

APPEAL from the District Court of the Fourteenth Judicial District of Dallas.    Tried below before J. C. Muse, Esq., Special Judge.

This conviction was in the second degree for the murder of Jeff Arm- strong, and the penalty assessed was a term of twenty years in the peni- tentiary.

Coleman Long testified for the State, in substance, that the defendant was working under him at the St. George Hotel, in Dallas, at the time of the fatal difficulty.   He was employed a few days before to fill the place

of the deceased, who had to quit work because of sickness.   On the day of and before the difficulty the deceased applied to witness for re-employment, but witness told him that he had all the hands he needed.   A few minutes after this the witness saw the deceased and the defendant in a conversation on the sidewalk in front of the hotel.   Something which the witness did not understand was said about a quilt and a dime.   The defendant then called the deceased a "damned liar."   Thereupon the deceased struck the defendant in the face with his fist and then over the head with a brick.   He then got the defendant's head under his arm and was punishing him with his fist, when the defendant drew his pocket knife and attempted to open it with his teeth.   Witness called to deceased that defendant had his knife out, and deceased released the defendant and fled across the street.   Defendant threw a brick at deceased as he was fleeing and struck him in the back.   Deceased then got a brick and started toward the defendant, who ran up-stairs in the hotel.   Deceased threw a brick at defendant as he went up-stairs, but missed him.   Presently the defendant appeared at a second-story window of the hotel, from whence he threw two bricks at deceased.   Deceased called to him that if he threw any more bricks he, deceased, would go up-stairs and throw him, defendant, out of the window.   He also, according to witness's recollection, called defendant a coward, dared him to come down, and finally declared to defendant his intention of seeing and settling with him after he had quit work at 6 o'clock.   About fifteen minutes later the defendant came down-stairs and to the middle of the street where the witness and deceased were then talking.   Witness saw him raise his hand and make a lunge at deceased and heard him say, "You have no business treating a man that way."   Witness then saw that deceased was cut across the stomach and that his bowels were protruding.   Defendant left, and deceased died a few days afterward. The blow on the head with the brick thrown by the deceased in the first encounter raised a knot on defendant's head, and may have brought blood. Deceased had stopped talking, had nothing in his hand, and was making no demonstrations when cut.

This testimony was corroborated in substance by that of other witnesses, none of whom actually saw the cut made.   But immediately after the blow aimed by defendant at deceased they saw that deceased was cut.   Defendant's bloody knife was found a few moments later on the stairway of the hotel.

The charge of the court on manslaughter referred to in the fourth headnote of this report reads as follows:

"12.   Manslaughter is voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law.

"13.   By the expression 'under the immediate influence of sudden passion' is meant that the provocation must arise at the time of the killing,

and that the passion is not the result of a former provocation, and the act must be directly caused by the passion arising out of the provocation, if any, at the time of the killing. It is not enough that the mind is merely agitated by passion arising from some other provocation, or a provocation given by some person other than the party killed. The passion intended is either of the emotions of the mind known as anger, rage, sudden resentment, or terror, rendering the mind incapable of cool reflection.

"14. By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection.

"15. Insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain or injury, are not adequate causes.

"16. The following are deemed adequate causes: An assault and battery by the deceased causing pain and bloodshed; a serious personal conflict in which great injury is inflicted by the person killed, by means of a weapon or other instrument of violence, or by means of great superiority of strength. In order to reduce a homicide from murder to manslaughter it is not only necessary that an adequate cause existed legally sufficient to produce the passion of anger, rage, sudden resentment, or terror, but such adequate cause or provocation must have actually produced such passion as rendered the mind acting under it incapable of cool reflection, depriving it for the time of the power of comprehending the consequences of the act about to be committed. * * *

"19. The punishment for manslaughter is fixed by law at any term of years not less than two years nor more than five years. * * *

"22. If the defendant, John Surrell, killed the deceased, Jeff Armstrong, by the means charged in the indictment, under the influence of a rash, sudden, and hasty impulse, or under the influence of sudden anger, rage, resentment, or terror, then unless 'adequate cause' for such state of mind existed, as 'adequate cause' is herein defined, the offense, if not justifiable, was murder in the second degree. If such adequate cause did exist, the offense was manslaughter if not justified or excused by law.

"23. If the jury believe from the evidence that the defendant, John Surrell, did, on or about the first day of October, 1889, in the county of Dallas, in the State of Texas, unlawfully kill the deceased, Jeff Armstrong, as charged, but at the time he did so kill him he, said Surrell, was by some adequate cause moved to such degree of anger, rage, sudden resentment, or terror as to render him incapable of cool reflection, and in such state of mind he killed the deceased, Jeff Armstrong, then such killing was upon sudden passion and was manslaughter.

"24. Whether adequate cause existed for such sudden passion, if any there was, is for you to determine from the evidence under the law as given in the charge.

"25. If defendant, Surrell, cut and killed deceased, Armstrong, by

reason and on account of insulting words, or on account of an assault and battery so slight as to show no intention to inflict pain or injury, then such killing was not manslaughter.

"26. If the jury believe from the evidence that the defendant unlawfully cut and killed deceased as charged in the indictment, and that such killing, if any, occurred after the defendant, Surrell, and the deceased, Armstrong, had been engaged in a difficulty in which the deceased had struck the defendant with such force as to inflict on him pain or bloodshed, and that there was thereby created in the mind of Surrell such a degree of anger, rage, sudden resentment, or terror as to render him, Surrell, incapable of cool reflection, then such state of mind was sudden passion, and if without cooling time and under the influence of such sudden passion at the time of the killing Surrell killed Jeff Armstrong, the offense was manslaughter.

"27. If the jury believe from the evidence that prior to the homicide, if any, that the defendant, Surrell, and deceased, Armstrong, had been engaged in a difficulty in which the deceased had struck the defendant, Surrell, with such force as to inflict pain or bloodshed, and that there was thereby created in the mind of Surrell such a degree of anger, rage, sudden resentment, or terror as to render him, Surrell, incapable of cool reflection, and you find that there was a cessation of said difficulty, if any, and that thereafter Surrell renewed the difficulty and attacked and killed the deceased, Armstrong, with a knife, if he did; and you further find that such renewal of the fight and the killing of Armstrong, if any, was after sufficient cooling time from the fight between the defendant and the deceased, if any—that is, if there was sufficient time for such passion of the defendant, if any, to subside and for his reason to interpose, and to comprehend the consequences of the act about to be committed, if any, then the homicide would not be manslaughter.

"28. If you find the defendant guilty of manslaughter you will assess his punishment at imprisonment in the State penitentiary for a term of years not less than two years nor more than five years."

*I. R. Oeland* and *J. W. George,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—This appeal is from a conviction for murder of the second degree.

1. State's witness Long on cross-examination was asked by defendant's counsel the following question, viz.: "Were you not a member of the same lodge or order to which the deceased, Jeff Armstrong, belonged?" To this question the witness answered: "I do not belong to any lodge or order, and was not a member of any lodge or order to which the de-

ceased belonged." Defendant proposed to impeach the witness as to this matter by proving that he and the deceased were members of the same lodge or order, and based his right to do so upon the ground that it would affect the credibility of said witness, and furthermore would show the animus and bias of the witness in favor of the deceased and against the defendant.

The exceptions to the general rule that a witness cross-examined on a matter collateral to the issue can not be subsequently contradicted by the party putting the question embrace bias, motive, animosity, etc. Whart. Crim. Ev., 8 ed., secs. 376, 477, and 485; Blunt v. The State, 9 Texas Ct. App., 234; Black v. The State, 9 Texas Ct. App., 328; Daffin v. The State, 11 Texas Ct. App., 76; Hart v. The State, 15 Texas Ct. App., 202; Watts v. The State, 18 Texas Ct. App., 381; Tow v. The State, 22 Texas Ct. App., 175.

Mr. Wharton says: "A witness may also be compelled to answer questions concerning his relationship to the prosecution or the defense, his interest in the suit, his capacity of discernment and expression, his motives, and his prejudices. He may be thus required to explain whatever would show bias on his part or incapacity to testify accurately. He may be asked, for instance, whether he did not belong to a secret society whose object was to suppress a sect to which defendant belonged, the defendant being on trial for a riot in which sectarian prejudice was involved. And as to his relations to the defendant he may always be asked." Whart. Crim. Ev., 8 ed., 477.

But as presented to us in the bill of exceptions we are of opinion that the matter upon which it was sought to contradict the witness Long in this case was wholly collateral, and the evidence inadmissible. The fact that witness and deceased belonged to the same secret order would not necessarily create even a presumption that this relationship would bias and prejudice the witness against the defendant because he had killed the deceased. We are left entirely in the dark as to the nature, character, purpose, and object of this secret order, and the obligation it imposes upon its members towards each other in their relations to outside third parties. We can not presume, in the absence of any proof whatsoever, that the fact that parties belong to the same order necessarily prejudices them against the balance of the world, and renders them unworthy of credit in any controversy between one of their members and an outsider. It is not shown that defendant was in any manner involved in the objects or purposes of the organization, as was the case in the instance cited by Mr. Wharton, *supra.*

As the matter is presented to us in the defendant's bill of exceptions we do not think the learned trial judge erred in holding the matter collateral, and such as that contradictory evidence was not admissible to impeach the witness with regard to it.

2.   Defendant's second bill of exceptions was reserved to that portion of the charge of the court which instructed the jury upon circumstantial evidence.   The objection is that the case was not one of circumstantial evidence, but that the proof was direct and positive, and that there was no question as to the mode and manner of the killing, or the attendant circumstances, or the identity of the parties.   It is claimed that the charge lacks any foundation in the evidence, and being therefore erroneous must, because excepted to, necessarily reverse the case whether injury to the defendant on account of it be shown or not.

With regard to the charge and its character the now well settled rules. are that it must set forth distinctly the law applicable to the case—that. is, to the allegations and the evidence; that it must conform to and be. limited by the allegations, and must be applicable to and also limited by the evidence.   Code Crim. Proc., art. 678; Willson's Crim. Stats., secs. 2335–2337; 25 Texas Ct. App., 723.   If the charge rests the guilt of the. accused upon a state of case not made by the proof it will be erroneous. Chamberlain v. The State, 25 Texas Ct. App., 398.   If there is no evi- dence to warrant a charge it will be error to give it, and if the error be. excepted to the conviction must be set aside, although the error may have been harmless.   Willson's Crim. Stats., secs. 2337, 2363; Briscoe v. The. State, 27 Texas Ct. App., 193.

Again, an erroneous charge, although it inures to the benefit of the ac- cused, if excepted to constitutes reversible error.   White v. The State, 28. Texas Ct. App., 71; Jenkins v. The State, 28 Texas Ct. App., 86; Habel v. The State, 28 Texas Ct. App., 588.

A charge upon circumstantial evidence is not required of the court un- less the evidence relied upon by the State is purely and solely circum- stantial in character.   Johnson v. The State, 28 Texas Ct. App., 17; Huffman v. The State, 28 Texas Ct. App., 174; Self v. The State, 28. Texas Ct. App., 398; Clore v. The State, 26 Texas Ct. App., 624; Will- son's Crim. Stats., sec. 2342; Heard v. The State, 24 Texas Ct. App., 103..

In explaining the bill of exceptions taken to this charge the learned. judge says: "Defendant's knife was found with blood on it immediately after the cutting, but no witness testified that he saw defendant cut the. deceased with the knife; hence the charge complained of."   This expla- nation is borne out by the record if the evidence be literally considered. The facts were in such close juxtaposition that upon this point, had the. court failed and omitted under the circumstances shown to have charged on circumstantial evidence, we should have held that the omission was not. an error, since such a charge was *not required*.   But because a charge is. not required does not necessarily render it unauthorized and illegal.   The court thought the charge called for; it certainly can not be said to be. prejudicial or even unfavorable to the defendant; on the contrary, if it. had any effect at all it must have been beneficial to him.   Not being un-

authorized or illegal, and being favorable to the defendant, notwithstanding it might have been omitted, we hold that the giving of it does not constitute error, much less reversible error.

3.    The charge of the court upon the issue of manslaughter was excepted to because the same failed to instruct the jury that they might consider threats, insulting words, or gestures in connection with other inadequate causes which, considered together, might constitute adequate cause, or be so found by the jury to reduce the homicide to manslaughter. But defendant requested no written instruction to the effect stated.

The charge of the court was sufficiently full and comprehensive on the law of manslaughter, especially in the absence of any requested written instruction amplifying it in the particular mentioned.

Requested instructions are not required to be given by the court, even when correct, unless they are written and presented by the party desiring them.    Code Crim. Proc., art. 679.

We are of opinion that the law was fully and fairly submitted in the charge upon all the legitimate issues in the case.

We have found no reversible error in the record, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.